Hudson v. Icard

## III.

JAMES M. HUDSON v. MORDEN DEAN ICARD

No. 8225SC1324

(Filed 5 June 1984)

Negligence § 29.1— improperly loading logging truck—negligence in failure to warn

In an action to recover for personal injuries sustained by plaintiff while helping unload defendant's logging truck as a favor to defendant, the evidence was sufficient to show negligence by defendant and failed to show contributory negligence by plaintiff as a matter of law where it tended to show that defendant improperly stacked the logs above the standards on the sides of the truck; defendant unfastened a chain binder on one side of the truck and asked plaintiff to unfasten the chain on the other side but did not caution him about the logs above the standards, and logs above the standards rolled from the truck and struck plaintiff when he unfastened the chain.

APPEAL by defendant from *Grist, Judge*. Judgment entered 22 July 1982 in Superior Court, BURKE County. Heard in the Court of Appeals 16 November 1983.

Plaintiff sued to recover for personal injuries allegedly sustained while helping defendant unload a logging truck. In the trial, the jury answered the negligence, contributory negligence,

and damages issues in plaintiff's favor and from judgment rendered on the verdict, defendant appealed.

The relevant evidence at trial was to the following effect: Both parties were in the business of hauling logs from the forests of Burke and adjacent counties; plaintiff had been so engaged for ten to twelve years, defendant for two or three. Though they had worked together at different times in the past, at the time of the accident each was working independently. During the week beginning Monday, November 26, 1979, defendant hauled logs to Mace's Sawmill every day and on Friday, November 30, when he stopped his loaded truck at a service station, plaintiff, who was not working that day, was there. Defendant asked plaintiff to ride with him to Mace's Sawmill and help unload the truck and they rode to the sawmill together in defendant's truck. The bed of the truck had standards several feet high on each side to keep the logs in place as the truck traveled down the road; and the logs were also held in place by a chain, affixed under each side of the truck, that ran across the top of the load. Upon arriving at the sawmill, defendant pulled the truck off the side of the road at the same place where previous loads had been left. He unloaded at that place because the roadside there inclined slightly from the driver's side toward the passenger side, making it easy for the logs to roll off the truck when the standards were tripped. After stopping the truck, defendant got out, crawled under the truck bed on his side, unfastened the chain binder, and asked plaintiff, who was still in the truck, to unfasten the chain on his side also. Plaintiff got out, crawled under the truck bed, and unfastened the chain on that side. As plaintiff was getting out from under the truck, he was struck by some logs that rolled off the truck. The logs that rolled off and hit plaintiff had been above the standards, and there was nothing to hold them in place after the chain was loosened. Plaintiff admittedly did not notice that some of the logs were above the standards before he unfastened the chain and gave as his reason for not looking that defendant had been logging a long time and he figured that he had loaded the truck properly with the logs below the standards. After he was hit, plaintiff noticed that the logs remaining on the truck were even with the standards. As a logger, plaintiff knew how to unfasten chain binders and that logs higher than the standards could roll off the truck when the chain was loosened or removed. Plaintiff

also knew that defendant had unfastened the chain binder on the other side.

Lester Mace, the sawmill owner, testified that: When the truck came in the logs were piled above the standards; the approved practice among loggers in that area was not to stack logs above the standards; but that trucks with logs loaded higher than the standards were frequently seen on the roads and at his mill; and anyone who does not look at the logs and standards before unfastening the chain is not being careful.

Defendant testified that: The load of logs was rounded up to a point on top; when he unloaded logs by himself he usually kept his eyes on the logs on the truck and everyone unloading logs should do the same.

*Byrd, Byrd, Ervin, Blanton, Whisnant & McMahon, by Lawrence D. McMahon, Jr., for plaintiff appellee.*

*Van Winkle, Buck, Wall, Starnes and Davis, by Marla Tugwell, for defendant appellant.*

PHILLIPS, Judge.

Defendant's two main contentions, asserted with equal force and earnestness, are that though the evidence was insufficient to establish his negligence, it established plaintiff's contributory negligence as a matter of law. These questions will be considered together, since they require an appraisal of the evidence, which in each instance must be viewed in the light most favorable to the plaintiff. When so viewed, the evidence was sufficient, in our opinion, to raise the inference that defendant was negligent, but it does not establish plaintiff's contributory negligence as a matter of law. Under the circumstances recorded, that defendant makes these two contentions cheek by jowl is rather incongruous, it seems to us. Since it was defendant's truck that was being unloaded and plaintiff was there just as a favor to him, we can conceive of no reason, and the evidence suggests none, why plaintiff should be deemed more responsible for the developments that occurred than defendant was; the circumstances, when viewed favorably for the plaintiff, rather require the opposite conclusion. The evidence that defendant improperly stacked the logs above the standards and asked plaintiff to unfasten the chain, after already

Hudson v. Icard

loosening it on his side, but did not caution him about the logs being above the standards, amply supports the jury's conclusion that defendant was negligent. But that plaintiff heeded defendant's request to unfasten the chain on his side without pausing to examine the arrangement of the chain and logs does not lead, in our opinion, to the inescapable conclusion that plaintiff was contributorily negligent. That defendant, an experienced logger, had loaded the truck, knew whether it was properly done, and made the request to loosen the chain on the spur of the moment, as it were, are circumstances that could cause some rational minds to conclude, it seems to us, that acting without further observation or inquiry was the response of a reasonable man. In the daily activities of life under circumstances similar to those recorded here, we do not believe that reasonably careful and prudent people always verify the safety of the conditions before acting on the requests of their informed and experienced friends. Our belief is rather that what conduct was appropriate in the situation that existed was entirely a question of fact for the jury. Though legal maxims, rubrics and shibboleths are of great utility in solving most problems that litigation involve, they are of no benefit whatever in determining what reasonable people would or should do in many of the situations that arise during life's changing course; but human experience and insight, the chief assets of our jury system, are of great benefit in making such determinations.

Defendant's several other assignments of error, based upon the court's failure to give certain instructions to the jury and upon other instructions being given, are likewise without merit. A review of the charge convinces us that, though not in the form requested by defendant, it was legally correct and free from prejudicial error.

No error.

Judges WEBB and WHICHARD concur.